**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Corning Gilbert Incorporated, | ) | No. CV-12-2208-PHX-SMM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| John Mezzalingua Associates Incorporated, | ) ) | |
| Defendant. | ) ) ) | |

In this action Plaintiff alleges that Defendant has infringed on two U.S. Patents.  On July 30, 2013, the parties participated in a <u>Markman</u> hearing concerning the construction of the patent claims at issue.  <u>See</u> <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995), <u>aff'd</u> 517 U.S. 370 (1996).  After considering the arguments raised by the parties in their briefings and at the <u>Markman</u> hearing, the Court issues the following ruling.

**BACKGROUND**

Plaintiff Corning Gilbert Incorporated is a company that accuses a competitor, Defendant John Mezzalingua Associates Inc., d/b/a PPC Broadband, Inc., of infringing upon two patents held by Plaintiff relating to coaxial connectors.  The two patents at issue are Patents No. 9,114,990 (the "'990 Patent") and No. 8,172,612 (the "'612 Patent").

Coaxial cables are commonly used in a wide variety of applications to carry radio frequency signals between devices.  Among the most commonly known uses for coaxial cable is to connect TVs, set-top boxes, computers, DVD players and the like to signal sources such as satellite dishes, cable TV lines, etc.  In these cables, the inner conductor and the outer

1   conductor carry electrical signals.  The inner conductor is often made of flexible copper or

2   copper-clad wire, while the outer conductor is usually constructed of a flexible wire braid

3   and foil.

4           The inner conductor is customarily called the "signal feed" (or "signal"), while the

5   outer conductor is called the "ground return" (or "ground").  To connect a coaxial cable to

6   a device, mating connectors are used to connect the cable to the receptacle (i.e. on a DVD

7   player).  The center pin conductor of the coaxial cable must be connected to the central pin

8   on the receptacle.  Plaintiff's coaxial cable connectors that use the feature of the patents at

9   issue in this suit are called the "UltraShield" connectors.

10          When a connector is attached to a port on an appliance such as a DVD player, the

11  center conductor of the cable is inserted directly into the port.  The outer conductor is pressed

12  against and electrically contacts the tubular post of the receptacle, from which it can be put

13  into electrical communication with the outer part of the appliance port by tightening the

14  connector nut until the face or flange of the tubular post touches the appliance port to form

15  the ground path between the cable and the appliance.

16          The patents at issue here have substantially the same specification and drawings, but

17  different claims.  The patents are both titled "Electrical Connector with Grounding Member."

18  The patented connectors here purportedly addressed a longstanding problem in the art: that

19  posed by loose connectors which result in poor electrical connections between cable and

20  device.  The patents solved this problem by finding a way to assure that a good connection

21  existed even when the connector nut was not fully tightened.  This was a frequent problem

22  because in many cases it is difficult for an installer to reach connection ports with a wrench,

23  or to fully tighten the nut using fingers.  When a loose connection exists, a space is left

24  between the appliance port and the tubular post of the connector, resulting in poor or

25  sometimes no electrical connection.

26          The patented connectors here purportedly solved this issue by placing a resilient

27  electrical grounding member, such as a metallic spring, between the tubular post and the nut,

28  such that a reliable electrical connection path is maintained between them.  This insures that

1  an electrical ground path exists even when the nut is not fully tightened onto the appliance

2  port.

3        Pursuant to presentations at the <u>Markman</u> hearing and the parties' respective motions

4  and memoranda, Plaintiff alleges that no claim construction is required for the

5  straightforward terms in the '990 Patent, but asks the Court to construe three clauses of the

6  '612 Patent: two in Claim 2, and one in Claim 8.  Defendant takes issue with three clauses

7  in Claim 29 of the '990 Patent, and six clauses in the '612 Patent (five in Claim 2, one in

8  Claim 8).

9        Claim 29 of the '990 Patent states as follows, with disputed terms in bold-face type:

10  A coaxial cable connector for coupling a coaxial cable to an equipment port,
    the coaxial cable including a center conductor surrounded by a dielectric
11  material, the dielectric material being surrounded by an outer conductor, the
    coaxial cable connector comprising in combination:

12
        a. a tubular post having a first end adapted to be inserted into the prepared
13  end of the coaxial cable between the dielectric material and the outer
    conductor, and having a second end opposite the first end thereof;
14
        b. a coupler having a first end **rotatably secured over the second end of**
15  **the tubular post**, and having an opposing second end, the coupler including
    a central bore extending therethrough, a portion of the central bore proximate
16  the second end of the coupler being adapted for engaging the equipment port;

17        c. **a body member secured to the tubular post and extending about the**
    **first end of the tubular post for receiving the outer conductor of the**
18  **coaxial cable, wherein the body member contacts the coupler**; and

19        d. a resilient, electrically-conductive grounding member **disposed**
    **between the tubular post and the coupler**, the grounding member contacting
20  both the tubular post and the coupler for providing an electrically-conductive
    path therebetween;
21
        wherein the tubular post, the body member, the grounding member, and
22  the coupler are disposed about a common longitudinal axis;

23        wherein the grounding member comprises a spring projecting portion that
    extends away from a plane perpendicular to the longitudinal axis.
24

25  (Doc. 36 at 9-10.)

26        Claim 2 of the '612 Patent reads as follows, with disputed terms in bold-face type:

27        A grounding member for a coaxial cable connector having a post and a
    nut, comprising:
28

a **ring portion** composed at least partially of electrically conductive material, and a contact portion composed at least partially of a plurality of **circumferential spring members projecting from respective base portions in a plane of the ring** to respective movable portions displaced from the plane of the ring **along a circumferential path of the ring**, wherein the spring members are arranged symmetrically about the ring portion, **respective base and movable portions of each circumferential spring member lie predominantly along a common circumferential path**, and the contact portion provides for an electrically-conductive path through the post and the nut.

(Id. at 6-7.)

Claim 8 of the '612 Patent contains a clause stating that "**the circumferential spring members do not extend radially inward toward a center of the grounding member**."

Thus, the disputed terms for are: (1) "rotatably secured over the second end of the tubular post"; (2) "a body member secured to the tubular post and extending about the first end of the tubular post for receiving the outer conductor of the coaxial cable, wherein the body member contacts the coupler"; (3) "disposed between the tubular post and the coupler"; (4) "ring portion"; (5) "circumferential spring members projecting from respective base portions in a plane of the ring"; (6) "along a circumferential path of the ring"; (7) "respective base and movable portions of each circumferential spring member lie predominantly along a common circumferential path"; and (8) "the circumferential spring members do not extend radially inward toward a center of the grounding member."

## LEGAL STANDARD

Patent claim construction is a question of law and "is exclusively within the province of the court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). Claim construction is "the process of giving proper meaning to the claim language," the fundamental process that defines the scope of the protected invention. Abtox, Inc. v. Exitron Corp., 122 F.3d 1019, 1023 (Fed. Cir. 1997), citing Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp., 55 F.3d 615, 619-20 (Fed. Cir. 1995). Each claim of a patent is entitled to a presumption of validity and is to be treated as a complete and independent invention. Leeds and Catlin v. Victor Talking Mach. Co., 213 U.S. 301, 319 (1909).

The process of claim construction begins and ends in all cases with the actual words

of the claim.  Teleflex, Inc. v. Ficose N. Am. Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002). Claims should be considered as a whole, and terms used in multiple claims should be construed consistently.  Inverness Med. Switz. BmbH v. Princeton Biomeditech Corp., 309 F.3d 1365, 1371 (Fed Cir. 2002).  When the disputed words of a claim are unambiguous, courts assign the terms their ordinary and customary meanings as understood by persons of ordinary skill in the relevant art.  Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n., 366 F.3d 1311, 1321 (Fed. Cir. 2004); Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1370 (Fed. Cir. 2004).  There is a heavy presumption in favor of the ordinary and customary meaning of a claim term.  Tex. Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002).

To determine the ordinary and customary meaning of a claim term, courts may review sources including the claims themselves, the written description, the prosecution history, and dictionaries and treatises.  Id.; Teleflex, Inc., 299 F.3d at 1325; DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1324 (Fed. Cir. 2001).  Technical dictionaries are worthy of special note and constitute evidence of understanding of persons of skill in the relevant art. Linear Tech. Corp. v. Impala Linear Corp., 371 F.3d 1364, 1372 (Fed. Cir. 2004).  If a term has more than one plausible ordinary meaning, the court must consult the intrinsic record to identify which of the possible meanings is most consistent with the use of the words by the inventor.  Stephen Key Design LLC., v. Lego Sys., Inc., 261 F. Supp. 2d 1196, 1199 (N.D. Cal. 2003).

There are three sources of intrinsic evidence: "[t]he claims, the specification, and the prosecution history."  Markman, 52 F.3d at 979; Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Within the intrinsic evidence there is a "hierarchy of analytical tools."  Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1344 (Fed. Cir. 1998).  While "[t]he actual words of the claim are the controlling focus," the specification, which contains a written description of the invention, is also important, "in particular to determine if the patentee acted as his own lexicographer . . . and ascribed a certain meaning to those claim terms."  Id.; see also Abbott Labs. v. Syntron Bioresearch, Inc., 334 F.3d 1343,

1354 (Fed. Cir. 2003) (Stating that a patentee can act as his or her own lexicographer provided that the written definition, to the extent that it differs from the conventional definition, is set forth with reasonable clarity, deliberateness, and precision in the patent or its prosecution history to affect the claim.);  Bell Commc'ns, 55 F.3d at 620. When the inventor has expressly defined claim terms, "[t]he specification acts as a dictionary" and is generally dispositive as to the term's meaning.  Vitronics, 90 F.3d at 1582.

Where ambiguity cannot be resolved upon consideration of the intrinsic evidence, courts may consider extrinsic evidence of meaning, such as dictionaries and expert testimony, to help come to a proper understanding of the claims.  Id. at 1584 (holding that "where the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight."); Masco Corp. v. United States, 303 F.3d 1316 (Fed. Cir. 2002).  There is a preference for dictionaries over other extrinsic evidence such as expert testimony.  Nikon Corp. v. ASM Lithography B.V., 308 F. Supp.2d 1039, 1057 (N.D. Cal. 2004). Extrinsic evidence may not be used to vary or contradict the claim language. Vitronics, 90 F.3d at 1584. Thus, so long as the extrinsic evidence does not vary, contradict, expand or limit term meanings found in or construed in the intrinsic record, the Court may consult such evidence to "better understand the underlying technology."  Id.; Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc., 262 F.3d 1258, 1269 (Fed. Cir. 2001). Here, however, the Court has no need to consider extrinsic evidence.

## DISCUSSION

### I.    Disputed Claims Within the '990 Patent.

### A.   "rotatably secured over the second end of the tubular post"

Plaintiff contends that this claim term is simple and clear, and thus needs no further construction by the Court.  (Doc. 36 at 9-10.)  Defendant disagrees, and contends that this term should be construed to mean that "the coupler is axially fixed over the second end of the post by attachment to the body in a manner that allows the coupler to rotate." (Doc. 37 at 8.)

Defendant contends that its proposed claim construction is necessary in order to

1  clarify for the jury an essential requirement of Plaintiff's patented device that is not clearly

2  expressed in the plain language of the term.  Specifically, Defendant's proposed construction

3  details that the coupler is fixed over the second end of the tubular post by attachment to the

4  body of the connector.  This is more detailed than the actual claim language, which does not

5  specify whether the coupler is attached to the body of the connector, or directly attached to

6  the tubular post, or in some other way secured over the second end of the tubular post.

7       Defendant contends that the more detailed construction is necessary and supported by

8  the patent specifications.  (Doc. 37 at 6.)  In the patent specifications, Plaintiff's diagrams

9  of the connector indicate that the coupler is secured over the send end of the tubular post by

10  attachment to the body of the connector, rather than to the post itself or some other location.

11  (Doc. 36-4 at 6.)  Further, Defendant points out that the specification describing the preferred

12  embodiment of the device states that the coupling nut is designed and attached to the

13  connector in a manner so as "not to interfere with free rotation of the coupling nut" relative

14  to the tubular post.  (Doc. 36-4 at 15.)  Thus, Defendant argues, the coupler must necessarily

15  be attached to the body of the connector, as this is the only way to ensure the free rotation

16  of the coupler; if the coupler were instead secured by attachment to the tubular post itself,

17  the result would be friction between the coupler and the post, and thus interference with the

18  coupler's free rotation.

19       The Court disagrees that "free rotation" of the coupler requires that the coupler be

20  attached to the body member.  Defendant argues that "free rotation" of the coupler mandates

21  that the coupler be able to spin easily, which may only be achieved if the coupler is attached

22  to the body – but "free rotation" does not automatically require ease of rotation, and as

23  Defendant itself notes, a coupler attached directly to the tubular post is still capable of being

24  rotated, albeit with slightly more effort.

25       The Court does agree, however, with Defendant's argument that the claim language,

26  together with the specifications and diagrams, lead to the conclusion that the coupler must

27  be attached to the body – not because of the "free rotation" language, but because of a

28  separate portion of the claim which specifies that the body member contacts the coupler.  As

Defendant notes, section (c) of Claim 29 of the '990 Patent specifies that the body member contacts the coupler.  (Doc. 36-4 at 18.)  Defendant correctly points out that due to the construction of Plaintiff's connector, wherein the tubular post moves axially with respect to the rest of the connecter, if the coupler were secured directly to the tubular post and not the body member, the coupler would have to move with the post, which would take it out of contact with the body in violation of the limitation that the body member contacts the coupler.

Accordingly, the Court agrees with Defendant that claim construction is necessary to clarify this portion of the patent language.  While the claim language is the first step in analysis of the claim, specifications do serve as intrinsic evidence of the meaning of ambiguous claim terms, and as Defendant has demonstrated, it is not possible for Plaintiff's patent to cover a connecter wherein the coupler is not attached to the body member.

However, the Court finds unnecessary Defendant's proposed construction of the claim to require that the coupler be "axially fixed" over the second end of the post.  The plain language of the claim, that the coupler is "rotatably secured" over the second end of the post, is clear and unambiguous.  Defendant argued at the <u>Markman</u> hearing that without the added "axially fixed" construction, the term implies that the coupler could simply fall off the end of the connector.  The Court disagrees.  The claim language clearly states that the coupler is "secured" over the second end of the tubular post, which plainly indicates that the coupler is attached to the connector in a permanent fashion, and yet that it "rotatably" secured, and thus capable of rotation.  This portion of the claim term requires no further construction by the Court, and the Court will not inject additional terms or limitations where none are needed.

Accordingly, the Court will apply the following construction: the phrase "rotatably secured over the second end of the tubular post" of section (b) of Claim 29 of the '990 Patent will be construed as "rotatably secured over the second end of the tubular post by attachment to the body in a manner that allows the coupler to rotate."

**B.   "a body member secured to the tubular post and extending about the first end of the tubular post for receiving the outer conductor of the coaxial cable, wherein the body member contacts the coupler."**

Plaintiff contends here as well that the plain language of the claim is sufficient and requires no construction.  (Doc. 36 at 9-10.)  Defendant argues that this term should be construed to require that "the body is fixed to the post, extends axially at least as far as the first end of the post, and is attached to the coupler in a manner that allows the coupler to rotate."  (Doc. 37 at 6-9.)  Defendant's requested construction here essentially consists of three separate parts: (1) changing "secured" to "fixed"; (2) adding that the body member must extend "axially at least as far as the first end of the post"; and (3) specifying that the body member contacts the coupler by being "attached to the coupler in a manner that allows the coupler to rotate."

Defendant argues that "secured" must be changed to "fixed," but provides no convincing reason for the modification.  Indeed, as Defendant notes in its brief, the definition of "secure" when used as a verb means to fix or attach something firmly so that it cannot be moved or lost.  (Doc. 37 at 10.)  As such, the Court finds no reason to make this superficial change.

Defendant's second requested change, however, is a valid construction of the claim language.  As Defendant notes, the phrase "extending about the first end of the tubular post for receiving the outer conductor of the coaxial cable" means that the body member must extend at least as far as the end of the post that receives the cable (the first end).  Defendant also correctly notes that the patent diagram illustrates that the body member extends that far, and the plain meaning of the phrase "extending about" indicates that the body member extends to and surrounds that end of the tubular post.  Accordingly, the Court agrees with Defendant's proposed construction as to this portion of the claim term.

Defendant's third requested construction in this claim term is unnecessary. Defendant argues that "wherein the body member contacts the coupler" must be construed to require that body member contacts the coupler by being "attached to the coupler in a manner that allows the coupler to rotate."  The Court finds this construction superfluous in light of the

1   Court's construction of the claim term in Section A above, where the Court agreed with

2   Defendant's construction requiring that the coupler is rotatably secured to the body member,

3   not the tubular post.  Thus, the claim language here plainly describes what has already been

4   established: that the coupler is attached to the body member in a manner that allows it to

5   rotate.  This construction renders it an obvious fact that the coupler is attached to and in

6   constant contact with the body member, and can rotate.  Accordingly, the Court will not

7   apply any further construction to this portion of the claim term.

8         Therefore, the Court will apply the following construction: the phrase "a body

9   member secured to the tubular post and extending about the first end of the tubular post for

10  receiving the outer conductor of the coaxial cable, wherein the body member contacts the

11  coupler" of section (c) of Claim 29 of the '990 Patent will be construed to mean that the body

12  member is "secured to the tubular post and extending axially at least as far as the first end

13  of the post for receiving the outer conductor of the coaxial cable, wherein the body member

14  contacts the coupler."

15         **C.  "disposed between the tubular post and the coupler"**

16        Plaintiff argues that construction of this claim term is unnecessary, the plain and

17  ordinary meaning being sufficient. (Doc. 36.) Defendant argues that this phrase from section

18  (d) of Claim 29 should be construed to mean that "the grounding member is located between

19  the surfaces of the post and the coupler that it contacts." (Doc. 37 at 9.)  Plaintiff disagrees,

20  arguing that the claim language does not require that the grounding member be disposed

21  between the surfaces it touches, as Defendant proposes.

22        The Court finds Plaintiff's argument here contradictory and unsupportable.  The

23  patent claim clearly states that the coupler is located between the tubular post and the

24  coupler, and its function is to act as an electrically conductive path through the connector by

25  bridging the gap between the coupler and the tubular post.  In order to achieve its purpose,

26  the grounding member must therefore be located between the surfaces of the post and the

27  coupler that it contacts.  Plaintiff's disavowal of this obvious fact is unconvincing, and the

28  Court finds that Defendant's proposed construction is accurate and helps to clarify the claim

1   language.  The Court does not, however, see the need to change the word "disposed" to

2   "located."  Accordingly, the Court will construe this claim term to mean that "the grounding

3   member is disposed between and contacts the surfaces of the tubular post and the coupler."

4         **II.   Disputed Claims Within the '612 Patent.**

5         **A.   "ring portion"**

6         Plaintiff contends that "ring portion" is self-explanatory and no construction is

7   necessary for this claim term.  Defendant argues that this term should be construed to mean

8   "a circular portion of the grounding member, distinct from the contact portion."  (Doc. 37 at

9   10.)  This proposed construction can be divided into two parts: (1) changing "ring portion"

10  to "a circular portion of the grounding member"; and (2) adding "distinct from the contact

11  portion."  Defendant contends that this construction is proper because the claim's use of the

12  term "ring" requires that the grounding member be circular, rather than any other ring-like

13  shape (such as an oval or ellipse).  Defendant argues that the addition of "distinct from the

14  contact portion" is also necessary in light of the prosecution history wherein Plaintiff took

15  the position that the ring portion does not include the structure of the grounding member that

16  is located outside a circular ring.  (Id. at 10-11.)

17        The Court agrees with Defendant that the proposed construction of "ring portion" is

18  necessary to clarify the claim language.  The Court finds that the patent clearly contemplates

19  a circular grounding member, rather than one that is ovular or elliptical.  Indeed, the Court

20  is hard-pressed to imagine how any other shape could possibly be integrated into the device,

21  as the body member, tubular post, coupler, and coaxial cable are all circular in shape.

22  Although the Court agrees with Plaintiff that the technical definitions of "ring" and

23  "circumference" can potentially include non-circular shapes, the plain language of the claim

24  terms here clearly indicate that the grounding member is circular in shape.

25        Similarly, the Court agrees with Defendant that the addition of "distinct from the

26  contact portion" is required to conform the claim language to the prosecution history.  As

27  Defendant notes in its brief, during reexamination of this patent claim Plaintiff took steps to

28  avoid a prior art reference, that being the "Tatsuzuki" patent.  (Doc. 37 at 11.)  In order to

distinguish the Tatsuzuki patent, Plaintiff excluded from its definition of "ring portion" those parts of the grounding member outside of the circle.  This construction also comports with the plain meaning of the claim language, as the patent clearly differentiates between the "ring portion" and the "contact portions" of the grounding member, by describing a grounding member comprised of  "a ring portion . . . and a contact portion."  Accordingly, the Court will adopt Defendant's proposed construction of this claim language, and the term "ring portion" will be construed to mean "a circular portion of the grounding member, distinct from the contact portion."

**B.   "circumferential spring members projecting from respective base portions in a plane of the ring . . . along a circumferential path of the ring."**

Plaintiff and Defendant both propose constructions to the bolded portions of the following language in Claim 2 of the '612 Patent:

> A grounding member for a coaxial cable connector having a post and a nut, comprising:
>
> a ring portion composed at least partially of electrically conductive material, and a contact portion composed at least partially of a plurality of **circumferential spring members projecting from respective base portions in a plane of the ring** to respective movable portions displaced from the plane of the ring **along a circumferential path of the ring**, wherein the spring members are arranged symmetrically about the ring portion . . . .

(Doc. 36 at 6-7.)

Defendant proposes that "circumferential spring members" be construed as "spring members that are located about the circumference of the ring portion."  (Doc. 37 at 13-14.) The Court agrees with Defendant's proposed construction, as this construction reflects the plain meaning of the claim language, and clarifies that the patented grounding member in this device has spring members which are located along, about, or in other words in the same circumferential path as the circumference of the ring.  This construction comports as well with Plaintiff's own proposed construction of "along a common circumferential path," as discussed below in section C.

The parties each offer proposed constructions for the portion of the claim language "along a circumferential path of the ring."  Plaintiff argues that this portion of the claim

language should be construed as "the circumferential spring members project in a direction that is from respective base portions to respective movable portions and in the direction that is along a circumferential path of the ring. The respective base portions are in a plane of the ring and respective movable portions are displaced from the plane of the ring." (Doc. 36 at 13:1-5.) Defendant proposes that the term "along a circumferential path of the ring" be construed to mean that "the movable portions of the spring members follow the same path as the ring portion." (Id. at 15-16.)

The Court finds no material difference in meaning between these two proposed constructions. Both Plaintiff and Defendant propose constructions which emphasize that the spring members follow the circumference of the ring portion of the grounding member. Plaintiff's construction contains more detail, however, and will be adopted to assist the jury in understanding the claim language at issue here. Thus, the Court will construe "along a circumferential path of the ring" as "the circumferential spring members project in a direction that is from respective base portions to respective movable portions and in the direction that is along a circumferential path of the ring. The respective base portions are in a plane of the ring and respective movable portions are displaced from the plane of the ring."

Finally, Defendant proposes that the term "plane of the ring" be construed as "an imaginary flat surface that radiates out infinitely 360 degrees from the center of the ring." (Id. at 14.) Plaintiff takes the position that this term needs no construction, and that the plain meaning of the claim requires that a plane exist and be within the ring, the plane being "a feature of" the ring. The Court agrees with Defendant that the technical definition of a "plane" is an imaginary flat surface that radiates out infinitely 360 degrees from a given point. The Court agrees also with Defendant that nothing in the patent language nor the prosecution history indicates that Plaintiff acted as its own lexicographer and intended a specialized definition of the word "plane" in the claim. Accordingly, the Court will adopt Defendant's proposed construction of "plane of the ring."

**C. "respective base and movable portions of each circumferential spring member lie predominantly along a common circumferential path"**

Plaintiff proposes that this language be construed to read "the base portion and movable portion of the circumferential spring member each lie predominately in the same circumferential path." (Doc. 36 at 10-11.) At the <u>Markman</u> hearing, Defendant stated that although it thought no construction was necessary, it did not oppose Plaintiff's proposed construction. Although the Court sees little difference between "along a common circumferential path" and "in the same circumferential path," the Court finds that the proposed construction comports with the plain language of the claim and may assist the jury by clarifying the claim term. Accordingly, the Court will adopt Plaintiff's proposed construction.

**D. "the circumferential spring members do not extend radially inward toward a center of the grounding member."**

Plaintiff proposes that this language from Claim 8 of the '612 Patent be construed to read "the circumferential spring members do not project in a direction radially inward toward a center of the grounding member." (Doc. 36 at 15.) At the <u>Markman</u> hearing, Defendant stated that it had no opposition to this construction, although it again stated that it believed the plain language was sufficient. The Court will adopt Plaintiff's proposed construction, interposing "do not project in a direction radially inward" in place of "do not extend radially inward."

## CONCLUSION

Based on the foregoing,

**IT IS HEREBY ORDERED THAT:**

As to the disputed terms in the '990 Patent:

1. The claim term "rotatably secured over the second end of the tubular post" is defined as "rotatably secured over the second end of the tubular post by attachment to the body in a manner that allows the coupler to rotate."

2. The claim term "a body member secured to the tubular post and extending about the

first end of the tubular post for receiving the outer conductor of the coaxial cable, wherein the body member contacts the coupler" is defined as "a body member secured to the tubular post and extending axially at least as far as the first end of the post for receiving the outer conductor of the coaxial cable, wherein the body member contacts the coupler."

3.   The claim term "disposed between the tubular post and the coupler" is defined to mean that "the grounding member is disposed between and contacts the surfaces of the tubular post and the coupler."

As to the disputed terms in the '612 Patent:

1.   The claim term "ring portion" is defined as "a circular portion of the grounding member, distinct from the contact portion."

2.   The claim term "circumferential spring members" is defined as "spring members that are located about the circumference of the ring portion.

3.   The claim term "along a circumferential path of the ring" is defined to mean that "the circumferential spring members project in a direction that is from respective base portions to respective movable portions and in the direction that is along a circumferential path of the ring.  The respective base portions are in a plane of the ring and respective movable portions are displaced from the plane of the ring."

4.   The claim term "plane of the ring" is defined as "an imaginary flat surface that radiates out infinitely 360 degrees from the center of the ring."

5.   The claim term "respective base and movable portions of each circumferential spring member lie predominantly along a common circumferential path" is defined to mean that "the base portion and movable portion of the circumferential spring member each lie predominately in the same circumferential path."

6.   The claim term "the circumferential spring members do not extend radially inward toward a center of the grounding member" is defined to mean that "the circumferential spring members do not project in a direction radially inward toward a center of the grounding member."

DATED this 21st day of August, 2013.

_____
Stephen M. McNamee
Senior United States District Judge